UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**GAKK INC., GARY MILLER, and**
**KACEY MILLER,**

No. CV 09-6282-MO

Plaintiffs,

OPINION AND ORDER

v.

**ACCEPTANCE CASUALTY**
**INSURANCE COMPANY,**

Defendant.

**MOSMAN, J.,**

Plaintiffs GAKK Inc., Gary Miller, and Kacey Miller (collectively, "the Millers") own and operate the Black Forest Tavern and Beer Garden in Eugene, Oregon. A patron, Scott Zeppa, sued the Millers in Lane County Circuit Court for personal injury arising out of an incident in which Patrick Thornhill, an employee of the Black Forest Tavern, consumed alcohol and "caused a knife to make contact with [the patron], resulting in a stab wound . . . as well as a head injury." (Pls.' CSMF (#12) Ex. A at ¶ 5.) When the Millers tendered defense of the lawsuit to their insurer, defendant Acceptance Casualty Insurance Company, Acceptance refused the tender. The Millers subsequently filed this action for breach of contract and a declaratory judgment that Acceptance owes the Millers a duty to defend. Because the complaint provides a basis for coverage if Mr.

Thornhill acted without intent to injure Mr. Zeppa, Acceptance is obligated to defend the Millers in the underlying liability action. Accordingly, I grant the Miller's Motion for Summary Judgment (#11) and deny Acceptance's Cross-Motion for Summary Judgment (#14).

## DISCUSSION

Under Oregon law, "[t]he insurer has a duty to defend if the complaint provides *any basis* for which the insurer provides coverage." *Ledford v. Gutoski*, 877 P.2d 80, 83 (Or. 1994) (emphasis in original). Generally, a court resolves the issue of an insured's duty to defend by analyzing only two documents: the insurance policy and the operative complaint in the underlying liability action. *Abrams v. Gen. Star Indem. Co.*, 67 P.3d 931, 933 (Or. 2003). If there is "[a]ny ambiguity in the complaint with respect to whether the allegations could be covered" by the insurance policy, the ambiguity "is resolved in favor of the insured." *Ledford*, 877 P.2d at 83.

### I.    The Miller's Insurance Policy

On or about October 26, 2007, Acceptance issued an insurance policy to the Millers. (Pls.' CSMF (#12) ¶ 1.) In relevant part, the policy extends liquor liability coverage for "those sums that the insured becomes legally obligated to pay as damages because of 'injury' to which this insurance applies if liability for such 'injury' is imposed on the insured by reason of the selling, serving, or furnishing of any alcoholic beverage." (Pls.' CSMF (#12) Ex. B at 98.) An "injury" is defined to include "damages because of 'bodily injury' and 'property damages.'" (Pls.' CSMF (#12) Ex. B at 101.)

#### A.    *The Assault and/or Battery Exclusion*

The policy also contains a relevant exclusion for "Assault and/or Battery." (Pls.' CSMF (#12) Ex. B at 19.) Under the exclusion, the Millers' insurance coverage does not extend to:

      A.      Any claims arising out of Assault and/or Battery or;

      B.      Any act or omission in connection with the prevention or suppression of such acts . . . , or

      C.      Claims, accusations or charges of negligent hiring, placement, training or supervision arising from any of the foregoing . . .

(Pls.' CSMF (#12) Ex. B at 19.)

The policy does not define "assault" or "battery," and Oregon courts have not defined those terms in the context of insurance policies. Other jurisdictions have uniformly construed the terms "assault" and "battery" by importing definitions from the tort law of the forum state. *See, e.g.*, *Bucci v. Essex Ins. Co.*, 393 F.3d 285, 297 (1st Cir. 2005); *United Nat'l Ins. Co. v. Waterfront N.Y. Realty Corp.*, 994 F.2d 105, 108 (2d Cir. 1993); *Mount vernon Fire Ins. Co. v. DLRH Assocs.*, 967 F. Supp. 105, 111-112 (S.D.N.Y. 1997); *First Fin. Ins. Co. v. Bugg*, 962 P.2d 515, 524-25 (Kan. 1998). Accordingly, I look to Oregon tort law to define the scope of the assault and battery exclusion at issue here.

Oregon courts generally agree that an "assault is an intentional attempt by force to do violence to the person of another, and a 'battery is the actual application to such person of the attempted force and violence.'" *Cook v. Kinzua Pine Mills Co.*, 293 P.2d 717, 723 (Or. 1956) (quoting *Stark v. Epler*, 117 P. 276, 278 (Or. 1911)). Although *Cook* noted minor variations in these definitions, that case specifically clarified the intent element required to prove assault or battery—the only element that matters for purposes of resolving the Millers' claims against Acceptance. Under the rule announced in *Cook*, both assault and battery require intent "to do violence and personal injury to the person assaulted." *Id.* In this respect, Oregon law distinguishes "between an intent to do an act which may be wilful or wanton and which may result in contact, on the one hand, and an

act involving an intent to cause harmful or offensive contact with the person, on the other." *Id*; *see also Safeco Ins. Co. v. House*, 721 P.2d 862, 866 n.2 (Or. Ct. App. 1986) ("[T]he rule in Oregon concerning coverage and exclusions for intentionally injurious acts is that 'the acts must have been committed for the purpose of inflicting the injury and harm.'") (quoting *Nielsen v. St. Paul Cos.*, 583 P.2d 545, 547 (Or. 1978)).

Based on the rule announced in *Cook* and affirmed in *Nielsen*, the answer to a single question will resolve the Millers' claims in this case: Would the underlying complaint allow Mr. Zeppa to recover either for unintentional conduct or for intentional conduct that was not intended to cause injury? If so, the complaint alleges a basis for recovery that falls outside the assault and battery exclusion, and Acceptance has a duty to defend the Millers in the underlying lawsuit. But if the complaint would not permit recovery for an unintended harm, then Acceptance has no duty to defend. *See Ferguson v. Birmingham Fire Ins. Co.*, 460 P.2d 342, 348 (Or. 1969).

## II.     The Underlying Complaint

On August 3, 2009, Mr. Zeppa served an Amended Complaint on the Millers seeking damages for personal injuries sustained at the Black Forest Tavern on June 30, 2008. (Pls.' CSMF (#12) ¶ 8.) The complaint is one for negligence, and all negligence claims arise out of the following incident alleged in the complaint:

> After consuming the alcoholic beverages served by the Black Forest Tavern and while in the Black Forest Tavern, Thornhill became under the influence of alcohol and thereafter caused a knife to make contact with plaintiff, resulting in a stab wound to plaintiff's mouth, face and tongue, as well as a head injury causing a concussion, lacerations and soft tissue injury.

(Pls.' CSMF (#12) Ex. A at ¶ 5.)

Because the complaint contains no explicit allegations that Mr. Thornhill acted with intent

to injure Mr. Zeppa, Mr. Thornhill's intent must be inferred, if at all, from the allegations of his conduct. Oregon law cautions that "the court should only infer . . . subjective intent to cause harm or injury as a matter of law when such subjective intent is the only reasonable inference that may be drawn from the insured's conduct." *Allstate Ins. Co. v. Stone*, 876 P.2d 313, 315 (Or. 1994). Despite the artfully pleaded allegation that Mr. Thornhill "caused a knife to make contact with plaintiff," the complaint's description of the incident and Mr. Zeppa's resultant injuries raises a strong presumption that Mr. Thornhill acted intentionally. Elsewhere in the complaint, there is language that directly invokes an inference of intentional assault and battery. For example, the complaint explicitly states that Mr. Thornhill was an employee of the Black Forest Tavern "[a]t the time of the assault" (Pls.' CSMF (#12) Ex. A at ¶ 12), and that Mr. Zeppa "is in need of psychological counseling because of the violent nature of the attack" (*Id.* at ¶ 10).

More fundamentally, each of the five allegations of negligence against the Millers is based on an act or omission committed "when [the Millers] knew, or in the exercise of reasonable care should have known, that Thornhill had a violent nature and could become violent and threatening to patrons." (Pls.' CSMF (#12) Ex. A at ¶¶ 7(a)-(e).) Because the negligence claims against the Millers are premised entirely on the Millers' alleged failure to exercise reasonable care with respect to Mr. Thornhill's violent and threatening tendencies, the complaint would not permit recovery for an injury that was not caused by violent and threatening behavior. Based on these allegations, I find it difficult to imagine a scenario in which Mr. Thornhill could violently and threateningly attack Mr. Zeppa without also intending to injure him.

Nevertheless, courts throughout the United States hold that voluntary intoxication may negate a person's capacity to form an intent to injure, thereby moving the underlying conduct outside the

scope of an assault and battery exclusion. *See Hunter v. Farmers Ins. Co.*, 898 P.2d 201, 207 (Or. Ct. App. 1995); *Republic Ins. Co. v. Feidler*, 875 P.2d 187, 192 (Ariz. Ct. App. 1993); *Grp. Ins. Co. v. Czopek*, 489 N.W.2d 444, 461-62 (Mich. 1992) (Levin, J., dissenting) (collecting cases from other jurisdictions); *see generally* James L. Rigelhaupt, Jr., *Liability insurance: intoxication or other mental incapacity avoiding application of clause in liability policy specifically exempting coverage of injury or damage caused intentionally by or at direction of insured*, 33 A.L.R. 4th 983 1984) (describing a split among jurisdictions with no clear majority rule). *But see Beckwith v. State Farm Fire & Cas. Co.*, 83 P.3d 275, 277 (Nev. 2004); *State Farm Mut. Auto Ins. Co. v. Martin*, 660 A.2d 66, 68 (Pa. Super. Ct. 1995); *State Auto Mut. Ins. Co. v. McIntyre*, 652 F. Supp. 1177, 1217 (N.D. Ala. 1987). For purposes of interpreting the assault and battery exclusion, it is critical that Oregon is one of the jurisdictions in which voluntary intoxication may prevent a person from forming the requisite intent to commit an intentional tort, and, under Oregon law, the question of whether an intoxicated person intended a certain result from his conduct is a pure question of fact. *See Hunter*, 898 P.2d at 207; *Safeco Ins.*, 721 P.2d at 863-66. Based on Oregon's rule regarding voluntary intoxication, Oregon's requirement that an "assault" or "battery" include the intent to cause injury, the complaint's allegations that Mr. Thornhill was "under the influence of alcohol" and "visibly intoxicated," (*see* Pls.' CSMF (#12) Ex. A at ¶¶ 5, 7(a)), and the rule that all ambiguities in the complaint must be resolved in favor of the insured, I am compelled to find that the complaint in this case provides a possible basis for recovery that falls within the insurance policy and outside the assault and battery exclusion. Even if Acceptance were to argue that coverage under these circumstances violates the clear intent of the parties, the assault and battery exclusion would be subject to two or more plausible interpretations that withstand scrutiny, creating an ambiguity. *See*

*N. Pac. Ins. Co. v. Hamilton*, 22 P.3d 739, 741-42 (Or. 2001). In light of that ambiguity, the exclusion would necessarily be construed against Acceptance, the drafter of the policy. *See id.*

## CONCLUSION

This is, of course, a ruling only lawyers could love. It takes a form of willful blindness, mandated by the legal principles described above, to assert that when Mr. Thornton stabbed Mr. Zeppa in the face with a knife, he might not have intended any harmful or offensive contact. We can all suspect the day may come when the facts show the required intent for the exclusion to apply. But at this stage, when only the complaint and the policy are in play, I am obligated to find a duty to defend. For the foregoing reasons, the Millers' Motion for Summary Judgment (#11) is GRANTED, and Acceptance's Cross-Motion for Summary Judgment (#14) is DENIED.

IT IS SO ORDERED.

DATED this  16th  day of August, 2010.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Court